# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                     No. 17cr2383-WJ

JOSEPH ANAYA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE
## PURSUANT TO *FRANKS V. DELAWARE*

THIS MATTER comes before the Court following a hearing upon Defendant's Motion for Suppression of Evidence Pursuant to *Franks v. Delaware,* filed December 4, 2017 (**Doc. 23**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Defendant is charged with felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). The evidence against him was seized pursuant to the execution of a search warrant of the Parque De Villa residence on May 26, 2017, based on an affidavit (hereinafter the "Affidavit") presented by Officer Zebulum Evridge of the Santa Fe Police Department. Defendant contends the Affidavit contains knowingly false statements and omissions of material fact and in the absence of these (allegedly) knowingly false statements, the application for the warrant is insufficient to establish probable cause for its issuance. Defendant contends the warrant is thus invalid and moves for suppression of all evidence seized pursuant to its

execution. On February 26, 2018, a hearing was held on the motion, at which Officer Evridge testified.[1]

The criminal matter arises from a continuing dispute between Defendant and his sister, Ms. Jolene Anaya concerning the care of Defendant's minor child, U.A. At the time of the hearing on this motion, U.A. was placed with Ms. Anaya as guardian under temporary state custody.[2]

## I. May 9 – 25th Incidents as Described in Affidavit

The series of events described in the Affidavit (Doc. 23-1) started with Officer Evridge and another officer, Officer Apodaca, responding to a call for service from Defendant on May 9, 2017. When the officers arrived, Defendant described to the officers the ongoing custody issue involving his sister. Defendant sought the officers' assistance in retrieving his son from Ms. Anaya's residence, where U.A. was staying at the time. He stated that he would "break [Ms. Anaya's] f------g neck" if he didn't get his son back and said he would take matters into his own hands and retrieve his son on his own. Doc. 23-1 at 6.

The officers then went to Ms. Anaya's residence intending to retrieve Defendant's son. Ms. Anaya asked the officers not to return U.A. to Defendant because he was afraid of Defendant. She also claimed that Defendant threatened her with harm if she didn't give Defendant his son back. Doc. 23-1 at 8. The officers contacted Defendant on the phone who, once he was told of all the appointments the son had the following day, asked Ms. Anaya to keep the son overnight and return him the next day. The officers then went back to Defendant's residence to return the court paperwork. Defendant recorded the officers' presence there on his

---

[1] The parties submitted exhibits at the hearing, including video and audio recordings. Recording were also lodged with the Court with the briefs, but to minimize confusion, the Court will refer to the exhibits admitted at the hearing, unless otherwise noted.

[2] The underlying child custody case involved Defendant's son U.A., although Defendant has another minor child.

cell phone, and was described in the Affidavit that was later presented as being aggressive and belligerent. *Id.* at 7.

On May 10, 2017 (the next day), Officer Evridge attended a safe house interview regarding the son's situation, and was also asked to attend a district court hearing for the child custody case. Defendant appeared telephonically because his vehicle had been seized for driving on a revoked license. The Affidavit states that Defendant was verbally abusive towards the judge hearing the custody case, and that Ms. Anaya was threatened by Defendant after the court hearing.

On May 11, 2017, Officer Evridge conducted a victim/witness interview with Ms. Anaya. Ms. Anaya told Officer Evridge that she hoped she never ran into Defendant because he has violent tendencies and that he told her that he will "f—k me up. . . ." She said she was unable to sleep at night because she is in fear for her life and that she did not even feel safe at home without the fear that Defendant would come over and attempt to kill her. Doc. 23-1 at 8. The Affidavit states that in the interview, Ms. Anaya told Officer Evridge that Defendant "has a stolen handgun in his residence" and that he has "bragged to her" that the hand gun was stolen from the State Police with the serial numbers filed off. *Id.* She said that the handgun was kept in Defendant's closet inside a bag.

On May 17, 2017, Officer Evridge attended a state court hearing to determine whether Defendant could be held without bond. His sister, Ms. Anaya, testified against Defendant and stated that she saw a .45 caliber handgun in Defendant's residence, that is was a stolen State Police service weapon and that it was kept in Defendant's closet inside a bag.[3]

---

[3] According to the testimony presented at the hearing (although not mentioned in the brief), the May 17, 2017 detention hearing followed Defendant's arrest for state charges related to his conduct toward Ms. Anaya: intimidation of a witness, use of a telephone to intimidate or harass, and harassment. *See* Deft's Ex. B. Officer Evridge signed the affidavit for the arrest warrant on May 11, 2017.

The Affidavit continues: On May 25, 2017, following the May 17th detention hearing, Officer Evridge obtained through the proper chain of custody Defendant's recorded phone conversations from the detention facility. In this jail call, Defendant was heard asking the female on the end of the conversation to retrieve that "thing" from his closet and that his sister was trying to get him into some "serious serious shit." Doc. 23-1 at 9. The female (who turns out to be Defendant's younger sister) said she would call Ms. Anaya (Defendant's older sister), get the "thing" and hold onto it for him. The Affidavit concludes with Officer Evridge's statement that, based on his knowledge of Defendant and Ms. Anaya's statements, he believed that "there is a handgun located" at Defendant's residence.

The search was executed at the Parque de Villa residence, and a handgun was found hanging from a bag in a closet.

## II. Incidents from May 1-11, 2017 (as described by Ms. Anaya's Written Statement dated May 11, 2017)

On May 11, the same day Officer Evridge interviewed Ms. Anaya, Ms. Anaya prepared a six-page Voluntary Hand Written Statement. Doc. 23-2. The statement begins by describing an incident that occurred around May 1, 2017, when Defendant took "emergency custody" of his two children who were staying with their mother's home in Pecos, New Mexico at the time. The children were scared and wanted to stay with Ms. Anaya, and so Defendant brought the children to Ms. Anaya's house and left them to stay overnight. The following day, Defendant tried calling and texting Ms. Anaya while she was showering and getting ready for work and school for the children. When she was able to return his call, Defendant told her to get her "f----g kids" to his house or he was going to "f—k [her] up." Ms. Anaya told him it would take longer to bring the children to his house because she was going to call for a police escort. When Ms. Anaya arrived at his house, Defendant got upset with the officers because they were "taking too

4

long" and began recording the officers. The children were left there with Defendant, who continued to text Ms. Anaya throughout the afternoon and evening.

On May 3, Defendant called Ms. Anaya and told her to pick up his son. Ms. Anaya described Defendant as "hysterical" and that he was "crying and raising his voice." Doc. 23-2 at 2. She could hear both children crying in the background. Ms. Anaya went over to Defendant's house to pick up the son, but went with a friend. Defendant was still crying when Ms. Anaya and her friend got there, and Ms. Anaya could see inside to the living room because the front door was open. She was afraid to inside this because Defendant "braggs [sic] about having a gun." *Id.* Defendant, while still crying, told his son to "go on" to his "auntie, just go." The son ran out to Ms. Anaya, who took him to her home.

On May 4, Defendant called Ms. Anaya and demanded she bring back her son. Ms. Anaya told Defendant that his son was traumatized and didn't want to go back. Defendant reminded her of the court order that gave him custody of his son. Ms. Anaya took the son back to Defendant's house, but when she arrived there, U.A. did not want to stay at his father's house. In the end, Defendant told Ms. Anaya to take the son back to her house. According to Ms. Anaya's written statement, Defendant texted and "harass[ed]" Ms. Anaya all afternoon while she was at work. The chronology of events described in the written statement comes full circle when, on May 10, two officers (including Officer Evridge) showed up at Ms. Anaya's home to pick up the son and return him to Defendant who eventually agreed to let the son stay at Ms. Anaya's home that night because the son had appointments the following day.

**III. Relevant Law**

    A.    <u>Probable Cause</u>

5

An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). "Probable cause means that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *U.S. v. Tisdale*, 248 F.3d 964, 969 (10th Cir. 2001), citing *Gates*, 462 U.S. at 238-39. Where an officer does not present oral testimony in support of a search warrant affidavit, only the information contained within the "four corners" of the affidavit may be considered in evaluating whether probable cause existed. *U.S. v. Viarrial*, 157 F.Supp 3d 1081, 1089 (D.N.M. October 27, 2015), citing *U.S. v. Beck*, 139 Fed.Appx. 950, 954 (10th Cir. 2005). Unless a *Franks* hearing is warranted, the "four corners doctrine" limits a reviewing court to review only those materials submitted to the issuing judge. *Hackney v. McLaughlin*, 895 F.2d 1298, 1300 (10th Cir. 1990). The Tenth Circuit determines whether there was probable cause for a warrant based on the totality of circumstances. *Id*. (internal citation omitted); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2005) (internal citation omitted).

B.     *Franks* Hearings

There is a presumption of validity with respect to an affidavit supporting a search warrant. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. 438 U.S. at 155–56. A defendant is not entitled to a *Franks* hearing unless he makes a "substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." 438 U.S. at 155-56. This prohibition likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate

6

probable cause." *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir.2001), citing *Franks*, 438 U.S. at 171–72; *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990).

To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

It is not enough for the defendant to show that the affiant knowingly falsified information or recklessly disregarded the truth, not simply that information was omitted from the affidavit or that the information wasn't completely true. *U.S. v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989); *U.S. v. Green*, 175 F.3d 822, 828 (10th Cir. 1999) (noting that the *Franks* standard applies to affidavits in support of Title III intercepts). The test is whether the affidavit supports a finding of probable cause without the allegedly false information. *U.S. v. Morehead*, 959 F.2d 1489, 1498 (10th Cir.) on reh'g sub nom. *United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992).

**DISCUSSION**

Defendant claims that Officer Evridge knowingly and intentionally omitted information from the Affidavit regarding Ms. Anaya's knowledge of Defendant's possession of a gun. Defendant maintains that Officer Evridge made a knowing and intentional false statement in the Affidavit by representing that a firearm was currently present in Defendant's home, and omitting the information that:

(1) Ms. Anaya last saw the gun in 2016 Defendant's old apartment, and had never seen a gun in Defendant's current Parque de Villa residence;

(2) Defendant's request that his younger sister retrieve the gun occurred during a jail call from him in 2016;

(3) Ms. Anaya had not seen a gun in Defendant's immediate possession; and

(4) Defendant had not bragged about having a gun within the last week.

Defendant contends that statements in the Affidavit that (1) according to Ms. Anaya, [Defendant] *has* a stolen handgun in his residence" (Doc. 23-1 at 8); and (2) that Ms. Anaya testified in the detention hearing that she saw a .45 caliber tactical handgun inside Defendant's residence and that it was kept in his closet inside a bag (Doc. 23-1 at 9) are therefore false because it omitted material information about *when* Ms. Anaya came to learn this information.

An audio recording of Ms. Anaya's testimony at the May 17, 2017 detention hearing was admitted at the hearing on this motion. Govt's Ex. 1, track 2. At that hearing, Ms. Anaya testified that she knew of a call from Defendant while he was booked in jail after he had an accident while driving under the influence. In that conversation, Defendant had asked her younger sister to retrieve a gun from a closet in his residence, and that she accompanied her sister to his house to retrieve the gun. She found the gun hanging from a bag in Defendant's closet. Ms. Anaya provided this testimony in response to the prosecutor's question about a conversation that occurred "late last year"—meaning 2016. *Id.; see also* Doc. 28-1 at 1-2 (transcript of state court hearing).

A short May 9, 2017 video recording from Officer Apodaca's lapel camera was also presented at the hearing, during which time Officer Apodaca interviewed Ms. Anaya while Officer Evridge was questioning another witness at Ms. Anaya's house. Govt's Ex. 2. Ms. Anaya told Officer Apodaca that her brother "has" a gun, adding that she knew about the gun

because Defendant made a call from jail in November 2016 asking his younger sister to retrieve a gun hanging from a bag in his closet. Ms. Anaya saw the gun when she went with her sister to Defendant's home to retrieve the gun.

Officer Evridge also spoke to Ms. Anaya on May 9, 2017. In this short video clip, this time from Officer Evridge's lapel camera, Ms. Anaya can be seen and heard telling Officer Evridge that Defendant "has a stolen service weapon." Govt's Ex. 3.

Officer Evridge conducted a victim/witness interview with Ms. Anaya on May 11, 2017. Govt's Ex. 4 (video interview of Ms. Anaya). Ms. Anaya told Officer Evridge that she was in fear of going into her brother's house because she saw a gun at his house. However, when questioned about this, Ms. Anaya explained that she had seen the gun at Defendant's previous residence and not at the Parque de Villa residence where he currently resided.

Based on Ms. Anaya's statements in these recordings, Defendant argues that Officer Evridge knew that Ms. Anaya saw the gun in Defendant's *previous* residence in November 2016, but he omitted this information from the Affidavit in order to make it appear that Defendant currently possessed the gun.

It does appear that the Affidavit omits certain information—namely, the fact that Ms. Anaya saw the hanging in a bag in Defendant's closet in late 2016, and that she saw this gun in Defendant's previous residence, and not at the Parque de Villa residence which was the subject of the search warrant. However, a defendant is not entitled to a *Franks* hearing unless he makes a "substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *Franks,* 438 U.S. at 155-56; *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir.

1997).⁴  However, the Court finds no evidence suggesting that Officer Evridge's omission of this information was either reckless or deliberate, which is one of the requirements for a *Franks* hearing. A defendant must do more than simply show that information was omitted from the affidavit or that the information was not completely true. *U.S. v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989); *U.S. v. Green*, 175 F.3d 822, 828 (10th Cir. 1999).  He must show that the affiant knowingly falsified information or recklessly disregarded the truth.  *Id.*  In this case, then, Defendant must show that Officer Evridge recklessly omitted the fact that Ms. Anaya first saw the handgun in November 2016 in Defendant's previous apartment rather than his current residence; and this Defendant has not done.

In her May 9, 2017 statement to Officer Evridge, Ms. Anaya used the present tense to describe Defendant's possession of a handgun and to describe her fear of Defendant, stating that Defendant "braggs [sic] about having a gun." Doc. 23-2 at 2.  Ms. Anaya provided additional information to Officer Apodaca, explaining that she actually saw the gun when she went to retrieve it from Defendant's house after Defendant called from jail in November of 2016, but Officer Evridge was interviewing another witness at the time she made that statement. Officer Evridge obtained a recording of a May 20, 2017 jail call conversation, where Defendant was heard asking his sister to retrieve that "thing" from his closet.  Doc. 23-1 at 9.  The statements made by Officer Evridge in his Affidavit represented what he was in fact told by Ms. Anaya and what he heard himself in the May 20th jail call, and there is no indication that omitting the late 2016 date for the other *earlier* jail call, or the fact that Ms. Anaya had first seen the handgun in late 2016 after that earlier call, was done either deliberately or recklessly.

---

⁴  The Court held a hearing on Defendant's motion requesting a *Franks* hearing and the Court here finds that Defendant has not made a showing sufficient to be granted one.  However, because the parties had opportunity to present witnesses and testimony at the motion hearing, Defendant nevertheless received the benefits which a *Franks* hearing would have offered.

In addition to showing that an affidavit contains intentional or reckless false statements, a defendant who seeks a *Franks* hearing must also show that the affidavit, purged of its falsities or omissions, would not be sufficient to support a finding of probable cause. *Franks,* 438 U.S. at 155-56. Therefore, even assuming Defendant meets the first requirement, he cannot show that the Affidavit, even with all the missing information included, lacked probable cause.

I.  **Whether Omission Vitiates Probable Cause**

Defendant contends that certain statements should be excised from the Affidavit because they are false —namely, that Ms. Anaya stated that Defendant *has* a stolen handgun in his residence (Doc. 23-1 at 8); and that she testified in the May 17th state court detention hearing that she saw a .45 caliber tactical handgun inside Defendant's house (Doc. 23-1 at 9). Defendant claims that because the Affidavit did not include the information that she saw the handgun in Defendant's *previous* residence and that this happened in *late 2016*, these statements are false, and without these statements the affidavit lacks sufficient probable cause for a search warrant.

There are two problems with Defendant's analysis. First, neither of Ms. Anaya's statements, as contained in the Affidavit, is materially false. Ms. Anaya did tell Officer Evridge that Defendant "has a stolen handgun" in his house. That part is true. It is also true that in the state court detention hearing, Ms. Anaya testified that she saw a .45 caliber tactical handgun inside Defendant's residence.

Second, Defendant's slash-and-burn approach to a *Franks* inquiry is ill-suited to allegations that an affiant has *omitted* information. Where a defendant alleges that false statements were included in an affidavit, a *Franks* analysis requires that those statements be removed from the affidavit before reconsidering whether it still supported probable cause. *See Franks*, 438 U.S. at 155056 (defendant must make a substantial showing that the affidavit,

11

purged of its falsities, would not be sufficient to support a finding of probable cause). In other words, a *Franks* inquiry requires that the alleged error be rectified before reconsidering the affidavit, and where a defendant alleges that the affiant has omitted information, that information must be included in the affidavit before determining whether probable cause is vitiated. *See United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir.2001) (prohibition against intentional or reckless false statement "likewise applies to intentional or reckless omissions of material facts, which, *if included*, would vitiate probable cause") (citing *Franks*, 438 U.S. at 171–72) (emphasis added).[5] In this case, Defendant alleges that certain Affidavit statements are false (or incomplete) because information is omitted, and so that information must be inserted in the Affidavit before it can be reconsidered for the existence of probable cause. Instead, Defendant argues for skipping this step and simply removing statements from the Affidavit which were made by Ms. Anaya, even before the Affidavit can be considered with the information Defendant claims should have been there from the start.

So, the question is actually this: Would the Affidavit support probable cause if the Affidavit *included* the information that Ms. Anaya saw the handgun in Defendant's previous house in late 2016 after the November 2016 jail call? The answer is yes.

Ms. Anaya saw a handgun in Defendant's previous residence in late 2016, following the November 2016 jail call from Defendant. She did not see a handgun at the Parque de Villa residence which was the subject of the search warrant. Defendant suggests that this information is now stale because Ms. Anaya's observation of the gun occurred six months before the

---

[5] Likewise, where a defendant alleges that false statements were included in the affidavit, those statements would have to be removed from the affidavit *before* reconsidering whether it supported probable cause. *Franks,* 438 U.S. at 155056 (defendant must make a substantial showing that the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause). In this case, Defendant alleges that certain Affidavit statements are false because they omit certain information, and so reconsidering the Affidavit for probable cause *before* the omitted information is inserted reverses the analytical process.

Affidavit was submitted. Probable cause "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *U.S. v. Snow*, 919 F.2d 1458, 1459-60 (10th Cir. 1990), citing *U.S. v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986). The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant; instead, whether the information is too stale to establish probable cause depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.*

The time span at issue here is relatively insignificant under the circumstances, and would be insufficient to create a staleness issue. *See, e.g., U.S. v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir. 1977) (denying motion to suppress where 11-month interval between time accomplice observed radio equipment, police scanner and trip log in defendant's motor home and execution of search warrant did not render the accomplice's information stale). Defendant argues that a firearm is a small and readily moveable object which therefore increases the likelihood that the gun was not still in Defendant's house. That same argument, however, makes it even more likely that Defendant took the gun with him when he moved to his current residence. The notion that a person would either leave a handgun behind in a previous residence, or take steps to get rid of it just because he or she is moving, does not make a lot of sense and is therefore improbable.

A probable cause determination is based on a totality of the circumstances. *U.S. v. Perrine,* 518 F.3d 1196, 1205 (10th Cir. 2005). In this case, the circumstances stack up to a finding that the Affidavit supports probable cause even with the omitted information. These circumstances include information that Officer Evridge had gathered over time. First, Officer Evridge had reason to believe that Defendant has violent tendencies, based on his own interaction with Defendant as well as from Ms. Anaya's statements. Doc. 23-1 at 8. Second,

Defendant is a convicted felon and it has not been more than 10 years since his probation ended. Doc. 23-1 at 10. Third, Defendant has bragged that he has a handgun stolen from the State Police with the serial numbers filed off, and has made threats and continues to make threats, against his sister, Ms. Anaya. Doc. 23-1 at 8. Fourth, Ms. Anaya was in fear for her life and for her family's life and as of May 2017 was still afraid to enter Defendant's home (the Parque de Villa residence). Doc. 23-1 at 8. Fifth, during a May 20, 2017 telephone call from jail, Defendant asked the female on the other end of the conversation to retrieve that "thing" from a bag in his closet and hold onto it, telling her that his sister was trying to get him in "serious sh*t." Doc. 23 at 9.[6]

Defense counsel points out that Ms. Anaya told Officer Evridge that Defendant had not bragged about a gun in the past week, and therefore she could not know for certain that he currently had a gun in the house. However, probable cause is not about certainty:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*U.S. v. Pollack*, 895 F.2d 686, 691 (10th Cir. 1990). Based on the circumstances here, including Ms. Anaya's statements, Officer Evridge's observations and what he subsequently learned through his investigation, there was a fair probability that Defendant possessed a gun in the Parque de Villa residence—which is exactly what is required for probable cause. Counsel also points out that Defendant's reference to a "thing" in the May 20, 2017 jail call conversation does not necessarily refer to a handgun. However, a determination of probable cause does not require one to abandon common sense and the use of reasonable inferences. The May 20th call was

---

[6] At the hearing, defense counsel noted that in fact, Defendant's sister did testify against him and that this testimony was not positive. However, whatever reason Defendant may have had for making the May 20th call from jail to have the "thing" removed from his closet, that reason is not relevant to the issue of whether Officer Evridge may consider the call as a basis for believing Defendant had a gun in his house.

14

made from inside a detention facility, where phone calls are recorded. Defendant was a convicted felon, and was facing some serious time if he was convicted on the charges for which he was being detained. If Defendant wanted someone to remove a gun from his closet, he most likely would not have used the word "gun" in the conversation. Put another way, it is reasonable to conclude that in using the word "thing," Defendant wanting something retrieved which he preferred to remain unidentified. For all these reasons, Officer Evridge had reason to believe that Defendant still possessed the handgun at the Parque de Villa residence, even when including all the information which Defendant contends was intentionally omitted from the Affidavit.

## CONCLUSION

In sum, the Court finds and concludes that Officer Evridge did not knowingly, intentionally or recklessly either include false information in, or omit material information from, the Affidavit. Even so, Defendant has not shown that inclusion of the omitted information would vitiate probable cause, and the Court finds that even with this information, the Affidavit supports probable cause for the search warrant.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Suppression of Evidence Pursuant to *Franks v. Delaware,* **(Doc. 23)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE