# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

     v.                                                                                                                                        No. CR 17-2383 WJ

JOSEPH A. ANAYA,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED AS A RESULT OF INVALID ARREST WARRANT

THIS MATTER comes before the Court upon Defendant's Motion to Suppress Evidence Derived as a Result of an Invalid Arrest Warrant, filed September 24, 2018 **(Doc. 75)**. Defendant contends that his arrest by Santa Fe, New Mexico, law enforcement was in violation of his Fourth Amendment right to protection from unreasonable search and seizure, because the arrest warrant lacked probable cause and therefore any evidence derived as a result of the unlawful arrest, including jailhouse phone calls, must be suppressed under the "fruit of the poisonous tree" doctrine. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Defendant is charged with felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1).

On May 11, 2017, Defendant was arrested on state charges of (1) intimidation of a witness contrary to NMSA 1978 § 30-24-3(A)(2); (2) use of a telephone to terrify, intimidate, threaten,

harass, annoy or offend contrary to NMSA 1978 §30-20-12; and (3) harassment contrary to NMSA 1978 §30-3A-2. The victim of all three charges was Defendant's older sister, Jolene Anaya ("Ms. Anaya"), with whom Defendant was involved in a continuing dispute concerning the care of Defendant's minor child.

Defendant was arraigned on May 12. On May 17, 2017, a detention hearing was held, in which Ms. Anaya testified, and the state district court ordered that Defendant be detained. Based on Ms. Anaya's testimony, on May 25, 2017, Santa Fe Police Department ("SFPD") Officer Evridge obtained jailhouse phone calls made by Mr. Anaya from the jail, from which a warrant was issued to search 4245 Parque De Villa in Santa Fe, New Mexico, a residence where Defendant had been living prior to his arrest by SFPD. A search was executed the following day, and SFPD officers found a handgun hanging in a bag in Defendant's closet.

On May 30, 2017, a Criminal Complaint was filed in the United States District Court for the District of New Mexico, charging Mr. Anaya with one count in violation of 18 USC § 922(g)(1) (Doc. 1). Mr. Anaya was arrested by federal authorities on August 28, 2017, and appeared before United States Magistrate Judge Karen B. Molzen on the same day (Doc. 4).

Defendant has previously challenged the veracity of the search warrant, seeking to suppress the handgun found in the Parque de Villa residence. The Court denied that motion. *See* Doc. 39 (Mem. Opin. & Order denying motion to suppress). Defendant argued that the affidavit supporting the search warrant was based on false information because it omitted the fact that Ms. Anaya saw the handgun in 2016 at Defendant's previous residence, rather than in 2017 at the Parque de Villa residence. However, the Court found that the affidavit supported probable cause for the search warrant "even with the omitted information":

> These circumstances include information that Officer Evridge had gathered over time. First, Officer Evridge had reason to believe that Defendant has violent

2

tendencies, based on his own interaction with Defendant as well as from Ms. Anaya's statements. Doc. 23-1 at 8. Second, Defendant is a convicted felon and it has not been more than 10 years since his probation ended. Doc. 23-1 at 10. Third, Defendant has bragged that he has a handgun stolen from the State Police with the serial numbers filed off, and has made threats and continues to make threats, against his sister, Ms. Anaya. Doc. 23-1 at 8. Fourth, Ms. Anaya was in fear for her life and for her family's life and as of May 2017 was still afraid to enter Defendant's home (the Parque de Villa residence). Doc. 23-1 at 8. Fifth, during a May 20, 2017 telephone call from jail, Defendant asked the female on the other end of the conversation to retrieve that "thing" from a bag in his closet and hold onto it, telling her that his sister was trying to get him in "serious sh*t." Doc. 23 at 9.

Doc. 39 at 13-14.

Defendant has now filed a second motion to suppress. This motion to suppress challenges the adequacy (rather than the veracity) of the affidavit in support of the arrest warrant, claiming that Officer Evridge's affidavit did not include enough information to support a finding of probable cause as to any of the crimes with which he was charged. Defendant claims his phone calls made from jail were seized as a result of his illegal arrest and contends the all evidence found as a result of his unlawful arrest, including the phone calls, should be suppressed as "fruit of the poisonous tree" under the Fourth Amendment's exclusionary rule. His argument goes like this: if he had not been illegally arrested, he would not have been in jail to make the phone calls, no search warrant would have been issued, and no handgun would have been discovered hanging in the closet of the Parque de Villa apartment. The inquiry here is therefore the sufficiency of the affidavit supporting the arrest warrant.

## DISCUSSION

### I. Relevant Law

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures and requires that "no Warrants shall issue, but upon probable

cause." U.S. Const. amend. IV. *Katz v. United States*, 389 U.S. 347 (1967). Probable cause for an arrest warrant is established "by demonstrating a substantial probability that a crime has been committed and that a specific individual has committed the crime." *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996), cert denied 519 U.S. 871 (1996); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Generally speaking, probable cause exists when facts and circumstances are within an officer's knowledge, received through reasonable trustworthy information, that sufficiently warrant a person of reasonable caution to believe a crime has been or is being committed by the person to be arrested. *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991).

The Tenth Circuit determines whether there was probable cause for a warrant based on the totality of circumstances. *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2005) (internal citation omitted). The same probable cause standards are applicable to federal and state warrants under the Fourth and Fourteenth Amendments. *Whiteley v. Warden, Wyo. State Penitentiary,* 401 U.S. 560, 565 n.6 (1971). Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. *United States v. Nolan*, 199 F.3d 1180, 1182-83 (10th Cir. 1999).

**II.     Information Contained in Affidavit for Arrest Warrant**

The affidavit for the arrest warrant, May 11, 2017 contains the following information:[1]

- On May 9, 2017, Officer Evridge received a call for service from Defendant, who stated that he had court custody paperwork from his son;

- During this call, Defendant was verbally abusive and initially non-compliant;

- After speaking with Defendant, Officer Evridge felt that it would be best from a safety standpoint to go with another officer to Defendant's home to retrieve the court documents;

---

[1] The Affidavit is attached to Defendant's Motion to Suppress. *See* Doc. 75-1.

4

- When Officers Evridge and Apodaca arrived at Defendant's home, Defendant was verbally aggressive with them, and made comments about his sister to the effect that he would go break her f**king neck if he didn't get his son back;

- Defendant also stated that he would kidnap his son if Ms. Anaya did not return him;

- Defendant insinuated a number of times that if the officers did not help him, he would take the matter into his own hands and retrieve his son on his own;

- The officers went to Ms. Anaya's home to retrieve Defendant's son, but Ms. Anaya asked them not to return Defendant's son to Defendant because the son feared Defendant. Defendant agreed to have his son stay with Ms. Anaya for the night;

- After the officers left Ms. Anaya's home, they went back to Defendant's home to return the court paperwork. Defendant argued with and was belligerent towards the officers;

- On May 10, 2017, Officer Evridge attended a safe house interview for Defendant's son. Following that interview, Officer Evridge was asked to attend a hearing in District Court for the custody case;

- During the court hearing, Defendant, appearing by telephone, was verbally abusive towards the judge and called her a "punk ass;"

- On May 11, 2017, Officer Evridge conducted a victim/witness interview with Ms. Anaya regarding Defendant. Ms. Anaya stated that Defendant had called her work and was making additional threats towards her, including threats to "break her f**king neck," kidnap his son from Ms. Anaya, and that Ms. Anaya better hope she never runs into him or he'll "f**k [her] up…;"

- Ms. Anaya also informed Officer Evridge that Defendant has violent tendencies and has expressed no regard for her life. She stated that she was unable to sleep at night because she was in fear for her life and that of her family. She also stated that she was unable to perform simple tasks such as signing her name due to the stress and fear she was living with on a daily basis because of her brother's threats;

- Ms. Anaya also stated that she cannot live her life normally because Defendant had her in fear for her life. She said that she could not stay safely in her home without the fear of Defendant coming over and attempting to kill her;

- Additionally, Ms. Anaya said that she could not go to her place of work without Defendant calling her;

- Ms. Anaya further stated that Defendant had a stolen handgun in his home, and that he had bragged to her that the gun was stolen from the State Police with the serial numbers filed off.

Defendant's initial challenge to the affidavit is that Officer Evridge failed to conduct any investigation of Ms. Anaya's allegations and that he relied solely on Ms. Anaya's account of threats by Defendant when he called her. *See Mata v. Anderson*, 685 F. Supp. 2d 1223, 1274 (D.N.M. 2010), *aff'd*, *Mata v. Anderson*, 635 F.3d 1250 (10th Cir. 2011) (probable cause standard requires an officer "to investigate basic evidence and to inquire if a crime has been committed."). The Court does not agree. Officer Evridge relied on first-party interviews, not only with Ms. Anaya but also with Defendant whom he personally visited in order to obtain Defendant's version of events. Officer Evridge's account was based on first-hand observation and experience of both Ms. Anaya and Defendant. Moreover, Officer Evridge's attendance at the "safe house interview" for Defendant's son and the state court custody hearing offered him a well-rounded grasp of the information and facts relevant to the situation sufficient to afford him a reasonable belief that Defendant's threats were credible. Therefore, the Court rejects Defendant's first challenge.

**III. Probable Cause for Counts Charged**

Next, Defendant claims that the arrest warrant was not supported by probable cause for each of the counts charged in the Criminal Complaint.

   A. <u>Intimidation of a Witness Contrary to NMSA 1978 § 30-24-3(A)(2)</u>

The first count of the Criminal Complaint is that on or about May 11, 2017:

> [Defendant] did threaten or intimidate Jolene Anaya, a witness or person likely to become a witness, in any judicial administrative, legislative or other official cause or proceeding for the purpose of preventing such individual from testifying to a fact, to abstain from testifying, or to testify falsely, . . .

NMSA 1978, § 30-24-3(A)(2)." NMSA 1978 § 30-24-3 provides in pertinent part:

> A. Bribery or intimidation of a witness consists of any person knowingly:
>
>    (2) intimidating or threatening any witness or person likely to become a witness in any judicial, administrative, legislative or other official cause or proceeding for

6

> the purpose of preventing such individual from testifying to any fact, to abstain from testifying or to testify falsely;

Doc. 75-2. Defendant contends that the Affidavit is deficient for two reasons:

(1) it fails to identify the proceeding in which the victim, Ms. Anaya, would be testifying, and

(2) provided no facts to support probable cause for the *mens rea* of the crime, which is that Defendant knowingly intimidated or threatened Ms. Anaya for the purpose of affecting her testimony at such a proceeding. *See State v. Miller,* 1966-NMSC-041, ¶ 20, 412 P.2d 240, 243 (when specific intent is an element of the crime charged, the complaint seeking an arrest warrant must indicate facts which show 'probable cause' to believe the required intent was present.").

Defendant points out the elements that must be proven to a jury in order to convict an individual of this crime:

> 1. _____ (name of witness) was a [witness] [person likely to become a witness] in a [judicial proceeding] [administrative proceeding] [legislative proceeding] [or] [_____ (name of official proceeding)];
>
> 2. The defendant knowingly [intimidated] [or] [threatened] _____ (name of witness) for the purpose of [preventing _____ (name of witness) from testifying to any fact] [causing _____ (name of witness) to abstain from testifying] [or] [causing _____ (name of witness) to testify falsely] in the [judicial proceeding] [administrative proceeding] [legislative proceeding] [or] [_____ (name of official proceeding)];
>
> [3. _____ (name of proceeding) was an official proceeding;]
>
> 4. This happened in New Mexico on or about the ____ day of _____, _____.

UJI 14-2402 NMRA (2001) (footnotes related to form omitted). However, in submitting the jury instructions for the charge, Defendant conflates *proving* the elements of a crime with the showing of probable cause that is required in an affidavit for an arrest warrant. Probable cause is established by demonstrating a substantial probability that a crime has been committed and that a specific individual has committed the crime. *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (internal citation

omitted) (describing probable cause standard as a "practical, nontechnical conception"); *U.S. v. Biglow,* 562 F.3d 1272, 1280 (10th Cir. 2009) (probable cause "is a matter of probabilities and common sense conclusions, not certainties"). It does not require proof on all elements of the crime charged. *See U.S. v. Nolan,* 199 F.3d 1180, 1182-83 (10th Cir. 1999) ("[o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.").

Reviewing the Complaint and Affidavit using the proper "totality of circumstances" standard, the Court finds that the Affidavit contains sufficient evidence to support probable cause for this charge. Officer Evridge had identified Ms. Anaya as having custody of Defendant's son. He had already attended a safe house interview involving custody of Defendant's son and a custody hearing where Ms. Anaya had testified; and because this was an ongoing custody case, it was very likely that Ms. Anaya would become a witness in yet another proceeding. Contrary to Defendant's reading, the statute does not require the identification of a particular proceeding in which the victim would be a witness; rather it requires probable cause to find that the person is "*likely to become* a witness . . . ." in a proceeding.

The Affidavit also notes Defendant's anger concerning these custody issues directed toward his sister as well as Defendant's verbal abuse toward the judge presiding over the custody hearing. These facts a finding that Officer Evridge had probable cause for believing that Defendant threatened Ms. Anaya in order to discourage her from getting further involved with custody of his son and to intimidate her from testifying in other hearings.

  B. <u>Use of a Telephone to Terrify, Intimidate, Threaten, Harass, Annoy or Offend Contrary to NMSA 1978 §30-20-12</u>

The second count of the Criminal Complaint charged Defendant with using a telephone on or about May 11, 2017 to terrify, intimidate, threaten, harass, annoy or offend Ms. Anaya. It states that:

> . . . during the call, the defendant did [threaten to inflict injury or physical harm on the person or property of Jolene Anaya and disturb by repeated anonymous calls the peace, quiet or right of privacy of the person receiving the call, contrary to Section 30-20-12, NMSA 1978."

Doc. 75-2.

In relevant part, § 30-20-12 NMSA 1978, use of telephone to terrify, intimidate, threaten, harass, annoy or offend, provides:

> A. It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to telephone another and use any obscene, lewd or profane language or suggest any lewd, criminal or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person. It shall also be unlawful for any person to attempt by telephone to extort money or other thing of value from any other person, or to otherwise disturb by repeated anonymous telephone calls the peace, quiet or right of privacy of any other person at the place where the telephone call or calls were received, or to maliciously make a telephone call, whether or not conversation ensues, with intent to annoy or disturb another, or to disrupt the telecommunications of another.
>
> B. The use of obscene, lewd or profane language or the making of a threat or statement as set forth in Subsection A shall be prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend.

Defendant contends that the Affidavit fails to provide substantial evidence that Mr. Anaya's alleged conduct occurred within the one call identified in the Affidavit; and that the statement "Mr. Anaya has been making threats" is extremely vague as to whether the threats occurred in the one reported phone call to Ms. Anaya's work on May 11, 2017 or whether these threats occurred at another time. Without this specificity, Defendant argues that the Affidavit cannot support probable cause that Defendant used a telephone to "threaten to inflict injury" on

Ms. Anaya with the intent to terrify, intimidate, threaten, harass, annoy or offend as set forth in the statute.

The Court rejects this argument—the Affidavit quite clearly identifies the phone calls relevant to the charged offense. *See* Doc. 75-1 at 2 ("It was after the court appearance Ms. Anaya called in with the threat [Defendant] made towards her today.").[2] The Affidavit also states that:

- Defendant had been making threats against Ms. Anaya, including threats to "break her f**king neck," kidnap his son from Ms. Anaya;
- Ms. Anaya better hope she never runs into him or he'll "f**k [her] up . . ."
- Ms. Anaya stated that Defendant had called her work and was making additional threats against her.

Doc. 75-1 at 2-3. These statements adequately set forth facts giving rise to probable cause that Defendant telephoned Ms. Anaya and used obscene or profane language to threaten her.

Defendant also argues that the second part of the charge relating to the disturbance of Ms. Anaya's peace, quiet or right or privacy through repeated anonymous calls, is not supported by any evidence in the Affidavit. This is true, but as the Government points out, that portion is merely an alternative means of violation §30-20-12, and the Court agrees. The Affidavit alleges and supports the other means by which Defendant violated the statute, and so this argument fails.

C. Harassment Contrary to NMSA 1978 §30-3A-2

Count III of the Criminal Complaint alleges:

HARASSMENT, in that on or about the 11th day of May, 2017, in Santa Fe County, New Mexico, [Defendant] did knowingly pursue a pattern of conduct, which would cause a reasonable person to suffer substantial emotional distress, that was intended to annoy, seriously alarm or terrorize another person, to-wit: [Ms. Anaya], and that served no lawful purpose, contrary to NMSA 1978, Section 30-3A-2.

---

[2] The Affidavit is dated May 11, 2017, which means the phone call was made on May 11, 2017. *See* Doc. 75-1 at 3.

Doc. 75-2. Section § 30-3A-2 states that "[h]arassment consists of knowingly pursuing a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person and that serves no lawful purpose. The conduct must be such that it would cause a reasonable person to suffer substantial emotional distress."

Defendant claims that the Criminal Complaint and Affidavit fail to establish probable cause for a violation of § 30-3A-2 because there is no evidence either that Defendant harassed Ms. Anaya, or that he intended to annoy, seriously alarm, or terrorize her. The Court disagrees: the Affidavit could not be clearer in describing the threats of violence made by Defendant and directed toward Ms. Anaya:

- Threatening to "break her f**king neck"; and

- Threatening to kidnap his son from Ms. Anaya, and that Ms. Anaya better hope she never runs into him or he'll "f**k [her] up . . . "

Ms. Anaya told Officer Evridge that she was unable to sleep at night because she was "in fear for her life, and her family's life"; she could not carry on normal tasks because of this fear and she could not go to her place of work without Defendant calling her. Doc. 75-1 at 3. During his May 11, 2017 interview with Ms. Anaya, Officer Evridge observed that she was unable to perform the simple task of signing her name, which "she stated was due to the stress and fear she's living with on a daily basis because of her brother's threats." *Id.* The effect of this conduct on Ms. Anaya was palpable and intrusive—and also reasonable, given the description of the ongoing nature of the custody issue.

Based on the statements in the Affidavit, Defendant's conduct was not limited to Ms. Anaya, but also emerged during Officer Evridge's encounter with Defendant on May 9, 2017 when he received the call for service from Defendant. When initially speaking with Defendant over the phone, Officer Evridge found him to be "very verbally abusive. . . ." to both himself and the

11

accompanying officer, and the verbal aggression continued through the visit. Doc. 75-1 at 2. In addition, Officer Evridge noted in the Affidavit that the state court custody hearing, Defendant, who appeared by telephone, was verbally abusive towards the judge and called her a "punk ass." Doc. 75-1 at 2.

The Affidavit offers ample evidence supporting a finding of probable cause that (1) Defendant pursued a pattern of conduct (2) causing Ms. Anaya to suffer substantial emotional distress that was intended to annoy, alarm or terrorize her (3) without any lawful purpose. Thus, the Court finds that the Affidavit was not deficient in supporting a charge under §30-3A-2.[3]

## IV. Good Faith Exception

Even if a search warrant is deficient, the good faith exception may preclude the exclusion of evidence. In *United States v. Leon*, 468 U.S. 897, 918 (1984), the Supreme Court said that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purpose of the exclusionary rule." *See also Herring v. U.S.,* 555 U.S. 135 (2009) (reiterating principles set forth in *Leon*). The Court in *Leon* recognized an exception to the exclusionary rule where evidence

---

[3] The Government supplemented its responsive pleading with a Tenth Circuit case, *U.S. v. Waupekenay*, where law enforcement illegally entered the defendant's residence and found defendant aiming a semi-automatic weapon at them. Defendant was subsequently charged with assaulting the officers with a deadly weapon. 973 F.2d 1533 (10th Cir. 1992). The court found that defendant "obviously intended" for police to see him aim a rifle at them and thus "could not have had a legitimate expectation of privacy in that action." *Id*. at 1537. Defendant's assault of the officers was found to be "evidence of a separate, independent crime" initiated against police officers in their presence and so was not tainted by the officers' illegal entry so as to require suppression of that evidence. *Id*. The Government contends that *Waupekenay* is applicable to this case because even if Defendant's arrest was illegal, Defendant had no reasonable expectation of privacy in the jail phone calls and so these calls should not be suppressed. However, Defendant argues that *Waupekenay* is distinguishable because making jail phone calls (as opposed to pointing rifles at law enforcement officers) is not evidence of a separate, independent crime. The Court agrees with this distinction, and adds a further observation: the court described the assault in *Waupekenay* as a crime committed in police presence, which alone would provide separate and independent support for a finding of probable cause for arrest. See 973 F.2d at 1537 (". . . [defendant] could not have had a reasonable expectation of privacy for any actions initiated subsequently to that time in their presence"). Therefore, the Court agrees with Defendant that *Waupekenay* lends nothing to the analysis here, but is unnecessary as the Court ultimately denies Defendant's motion.

seized pursuant to a warrant later held invalid is still admissible if the executing officers acted in good faith and with reasonable reliance on the warrant.

Based on the above findings, the Court finds that the Affidavit and Complaint were not deficient and so there is no need to turn to this exception. However, even if the search warrant was not supported by probable cause, the good faith exception would apply in these circumstances. Not surprisingly, Defendant contends that the exception would not apply because the warrant is so lacking in indicia of probable cause that it would be unreasonable for an officer to believe that probable cause existed. *See States v. McKnelly,* 6 F.3d 1447, 1454 (10th Cir. 1993) (an officer "fails to manifest the objective good faith necessary to trigger the exception in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable").

The inquiry here is whether Officer Evridge, as a reasonably well-trained officer, "would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922, n.23. In making this inquiry, the Court assumes that executing officers "have a reasonable knowledge of what the law prohibits. . . ." *Id.* at 919, n.20. The Court finds that Officer Evridge acted in good faith with respect to seeking the arrest warrant. His participation began with Defendant's call for service, and he adequately investigated the custody matter by conducting multiple first-party visits with both Defendant and Ms. Anaya. Based on his observations from these interviews and his observations from the state court proceedings, Officer Evridge would have reasonably believed that a reasonable issuing magistrate would find probable cause that Defendant had committed the offenses charged in the Criminal Complaint.

**CONCLUSION**

In sum, the Court finds and concludes that the Arrest Warrant supported a finding of probable cause for Defendant's arrest. Thus, Defendant's arrest was valid under the Fourth Amendment. Moreover, there is no legal basis for suppression of any evidence obtained subsequent to Defendant's arrest, including the jail phone calls.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence Derived as a Result of an Invalid Arrest Warrant **(Doc. 75)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE